UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| DORA I. BROWN,<br><br>                                  Plaintiff,<br><br>                -v.-<br><br>TWITTER, AUTOMATTIC INC., and<br>BLUEHOST-ENDURANCE<br>INTERNATIONAL GROUP,<br><br>                                  Defendants. | 19 Civ. 6328 (KPF)<br><br>**OPINION AND ORDER** |

KATHERINE POLK FAILLA, District Judge:

Plaintiff Dora I. Brown, proceeding *pro se*, brings this suit against

Twitter, Inc. ("Twitter"), Automattic Inc. ("Automattic"), and Bluehost-

Endurance International Group ("Bluehost," and collectively with Twitter and

Automattic, "Defendants"), alleging unspecified claims arising from various

technical issues she experienced while using Defendants' content-hosting

platforms.

Defendants now move to dismiss Plaintiff's Third Amended Complaint

(the "TAC"). Twitter and Bluehost have each separately moved to dismiss the

TAC for lack of subject matter jurisdiction pursuant to Federal Rule of Civil

Procedure 12(b)(1), and in the alternative, for failure to state a claim upon

which relief can be granted pursuant to Federal Rule of Civil Procedure

12(b)(6). Automattic has similarly moved to dismiss the TAC pursuant to

Federal Rule of Civil Procedure 12(b)(6), and in the alternative, requests that

Plaintiff be directed to provide a more definite statement of her claim pursuant

to Federal Rule of Civil Procedure 12(e). For the reasons that follow, the Court

denies Twitter's and Bluehost's motions to dismiss pursuant to Rule 12(b)(1),

and grants Defendants' motions to dismiss pursuant to Rule 12(b)(6).

## BACKGROUND[1]

### A.   Factual Background

### 1.   Plaintiff's Grievances with Automattic and Bluehost

Plaintiff maintains several websites on which she publishes materials

related to a book she has been writing for the past 40 years.  (*See* July 28,

---

[1]   The facts in this Opinion are drawn from the allegations in the submissions and statements the Court has deemed to comprise Plaintiff's Third Amended Complaint.  As stated in the Court's October 22, 2020 Order, given the liberality with which Plaintiff's claims must be viewed in light of her *pro se* status, the Court has construed Plaintiff's Second Amended Complaint (the "SAC" (Dkt. #41)), the document captioned her Third Amended Complaint (the "TAC" (Dkt. #43)), and Plaintiff's statements made during the conference held on July 28, 2020 (Dkt. #39 ("July 28, 2020 Tr.")), as the operative pleadings in this action.  (*See* Dkt. #44 (citing *Tracy* v. *Freshwater*, 623 F.3d 90, 101-102 (2d Cir. 2010); *Colon* v. *City of New York*, No. 16 Civ. 6425 (KPF), 2018 WL 740992, at *3 (S.D.N.Y. Feb. 6, 2018))).  Additional facts come from Plaintiff's briefing in opposition to Defendants' motions to dismiss.  (*See* Dkt. #66).  *See infra* Discussion Section B.2 n.8.  Although the Court has endeavored to reconcile Plaintiff's various submissions and statements, the pleadings are difficult to construe with precision.

Facts are also drawn from Twitter's Terms of Service (Dkt. #52-1), and exhibits appended to the Declaration of Melinda M. Morton in Support of Automattic's Motion to Dismiss ("Morton Decl., Ex. [ ]" (Dkt. #63)), which exhibits include documents that are either publicly available or incorporated by reference in the TAC.  "In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint."  *DiFolco* v. *MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010).  Moreover "[w]here a document is not incorporated by reference, the court may nevertheless consider it where the complaint 'relies heavily upon its terms and effect,' thereby rendering the document 'integral' to the complaint."  *Id.* (quoting *Mangiafico* v. *Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006)); *see also Chambers* v. *Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) ("[A party's] *reliance* on the terms and effect of a document in drafting the complaint is a necessary prerequisite to the court's consideration of the document on a dismissal motion." (emphasis in original)); *see generally Goel* v. *Bunge, Ltd.*, 820 F.3d 554, 559 (2d Cir. 2016) (discussing materials that may properly be considered in resolving a motion brought under Fed. R. Civ. P. 12(b)(6)).

For ease of reference, the Court refers to Twitter's opening brief in support of its motion to dismiss as "Twitter Br." (Dkt. #51); Bluehost's opening brief in support of its motion to dismiss as "Bluehost Br." (Dkt. #55); Automattic's brief in support of its motion to dismiss or to require a more definite statement as "Automattic Br." (Dkt. #61); Plaintiff's consolidated opposition brief as "Pl. Opp." (Dkt. #66); Twitter's reply brief as "Twitter

2020 Tr. 6:5-17, 6:25-7:4).  Beginning in February 2017, Defendant Bluehost, which provides domain name registrar and web-hosting services, served as the host for one of Plaintiff's websites, titled "Evergreen7.com." (*Id.* at 6:5-17; *see also* SAC 5).  Plaintiff paid Bluehost a monthly fee in exchange for leasing space on its servers.  (*See* July 28, 2020 Tr. 28:10-12).  In 2018, Plaintiff began separately maintaining a blog, titled "EV7 Blog," using the free website-hosting services provided by WordPress.org.  (*Id.* at 6:9-12, 8:2-7, 8:22-24; *see also* SAC 5).[2]  Plaintiff later decided to "upgrade" her EV7 Blog and transferred its contents to WordPress.com, a hosting platform owned and operated by Defendant Automattic.  (July 28, 2020 Tr. 6:9-17, 9:4-15; *see also* SAC 6-8).  She paid $96 for her "premium plan" with WordPress.com.  (SAC 6).  Automattic is also a domain registrar, and in March 2018, Plaintiff appears to have registered a separate domain with Automattic named "www.thetranspersonalway.training."  (July 28, 2020 Tr. 6:14-17, 15:6-15; *see also* SAC 6; TAC 1).

On or about September 17, 2018, Plaintiff paid approximately $70 to "24/7 WordPress Support" to migrate the contents of the EV7 Blog from Automattic's servers to Bluehost's servers.  (TAC 1; July 28, 2020 Tr. 11:22-13:8).[3]  Plaintiff alleges that she was concerned about site security and

---

Reply" (Dkt. #67); Bluehost's reply brief as "Bluehost Reply" (Dkt. #71); and Automattic's reply brief as "Automattic Reply" (Dkt. #70).

[2]    Automattic represents that it does not own WordPress.org (Automattic Br. 2), and WordPress.org is not a named defendant in this case.

[3]    Plaintiff alleges that she experienced "issues" with 24/7 WordPress Support, an entity that is not named as a defendant in this case.  (SAC 6).  Plaintiff has appended to her

understood that Bluehost's "Sitelock" feature would protect her website materials. (July 28, 2020 Tr. 11:22-12:2). Plaintiff's EV7 Blog was transferred to Bluehost as a "subdomain" of Plaintiff's website with Bluehost — Evergreen7.com. (*Id.* at 12:6, 13:7-8). Although Plaintiff had expected that www.thetranspersonalway.training would be transferred to Bluehost along with the EV7 blog, she subsequently realized that the site had remained with Automattic. (*Id.* at 16:21-17:5; *see also* SAC 8).[4] Plaintiff was also "surprised" to learn that Automattic was the "registrar" of the www.thetranspersonalway.training domain, as she had not intended to register that domain with Automattic. (July 28, 2020 Tr. 18:1-3, 20:19-22; *see also* TAC 1; SAC 75-82 (February 2019 email exchanges with Automattic)). Plaintiff filed a complaint with the Internet Corporation for Assigned Names and Numbers ("ICANN") regarding the issues with her website migration and her unease with Automattic remaining the registrar of www.thetranspersonalway.training. (*See* July 28, 2020 Tr. 21:1-5).

---

submissions various communications with "24x7wpsupport.com," which the Court understands to be 24/7 WordPress Support. (*See* SAC 10-33, 59-63). Those communications appear to reflect various technical issues Plaintiff encountered when she attempted to publish materials to "www.thetranspersonalway.training" and was directed by 24x7wpsupport.com to instead publish materials to her EV7 Blog. (*See id.*). In its briefing, Automattic submits that to the extent Plaintiff alleges claims against it arising from the conduct of 24x7wpsupport.com, those claims fail because Automattic has no affiliation with that entity. (Automattic Br. 9). And the very communications Plaintiff has appended to her pleadings confirm that 24x7wpsupport.com was not affiliated with Automattic or WordPress.com. (*See* SAC 18 ("[W]e are a 3rd party technical team we are not from wordpress.com[.]")). Moreover, 24x7wpsupport.com discloses on its website that it is "not affiliated with Automattic ... or WordPress." (Morton Decl., Ex. C at 5). Plaintiff has not provided any basis for attributing the conduct of 24x7wpsupport.com to Automattic or any of the other Defendants.

[4]     Plaintiff was refunded $22 by WordPress.com as a result of these issues. (SAC 8).

Given her continuing concerns about site security and her disinterest in having Automattic continue in its role as domain registrar, Plaintiff thereafter contacted Bluehost and Automattic to begin the process of transferring www.thetranspersonalway.training to Bluehost's servers.  (July 28, 2020 Tr. 19:2-22).  In March 2019, Plaintiff paid Bluehost $150 to migrate the contents of the www.thetranspersonalway.training site to the EV7 Blog.  (*Id.* at 19:22-24, 21:20-22:6; *see also* TAC 1).  But it appears that something went wrong during the transfer.  Approximately two weeks later, when Plaintiff checked on the status of her sites with Bluehost, she found that the contents of all three sites — the EV7 Blog, www.thetranspersonalway.training, and Evergreen7.com — were indecipherable.  (July 28, 2020 Tr. 22:25-23:5; *see also id.* at 23:1-5 ("[E]verything of mine was [ ] scrambled eggs …. I couldn't make heads or tails of it.")).  As a result, Plaintiff has been unable to make progress on her writing on any of the three websites.  (*Id.* at 23:17-25).  Her understanding is that Bluehost is unable to fix whatever errors occurred in the migration and consolidation of her websites, and she cannot afford to hire a website developer to assist her with reorganizing the contents of her sites.  (*Id.* at 23:21-22, 24:6-7).  Moreover, it appears that as of June 2019, the domain for www.thetranspersonalway.training remained registered with Automattic. (SAC 70 (June 2019 email exchange between Plaintiff and Automattic)).

## 2.    Plaintiff's Grievances with Twitter

Faced with these seemingly unresolvable issues with her websites, Plaintiff turned to writing on an account hosted by Defendant Twitter, where

she encountered an unrelated series of issues.  (July 28, 2020 Tr. 25:17-19;

*see also* Pl. Opp. 4).  At some point after switching media, Plaintiff received an

email from Twitter regarding "[a] bug impacting [her] privacy."  (Pl. Opp. 4).

The email stated that Twitter had resolved an issue where certain location data

had been "inadvertently collected," and that Plaintiff's account had been

affected.  (*Id.*).  Plaintiff alleges that after receiving this email, her personal

Twitter page began receiving "all sorts of traffic."  (*Id.*).  Plaintiff appears to

allege that her Twitter account improperly gained access to her "HP e-printer,"

and that she alerted HP Customer Support and Twitter's Office of Data

Protection about this issue.  (*Id.* at 4-5; July 28, 2020 Tr. 27:5-8).

It appears that around this time, Plaintiff began corresponding via

Twitter with another account holder who offered to assist her with her

"enterprise."  (Pl. Opp. 5).  After providing the account holder with her passport

photo, email address, and phone number, and receiving no further

communication, she became concerned about identify theft.  (*Id.*).  The Court

understands that Plaintiff may have closed her bank account due to these

concerns.  (*See id.*).  Plaintiff also alleges that sometime after she commenced

the instant action, in or around July 2020, she learned that both of her Twitter

accounts had been blocked.  (*Id.* at 6; TAC 1).  At the time Plaintiff filed her

TAC in October 2020, she was still unable to access her Twitter account.  (*See*

TAC 1).

Plaintiff has also detailed other technical difficulties that do not appear

to be attributed to any of the Defendants, including issues with the word

processing program on her computer and with her iPhone. (Pl. Opp. 5-6; July 28, 2020 Tr. 26:3-22).

B.    **Procedural Background**

Plaintiff initiated this action with the filing of her original complaint on July 8, 2019. (Dkt. #2). The case was reviewed by then-Chief Judge Colleen McMahon; in an order issued on September 20, 2019 (the "September 20 Order"), Judge McMahon ordered Plaintiff to file an amended pleading to address various deficiencies in the complaint. (Dkt. #5). In particular, Judge McMahon found that Plaintiff had failed to meet her burden of alleging subject matter jurisdiction, and advised Plaintiff on the requirements for doing so. (*Id.* at 2-6). The September 20 Order further observed that Plaintiff had filed eight cases in this District "in a matter of weeks," and warned Plaintiff against any further vexatious or frivolous litigation. (*Id.* at 6). Plaintiff has since represented that many of these cases related to her issues with Twitter, as well as other technical issues referenced above. (Pl. Opp. 5-6).

Plaintiff filed her First Amended Complaint (the "FAC") on October 22, 2019. (Dkt. #6). The matter was thereafter reassigned to this Court. On April 16, 2020, Bluehost and Automattic submitted letters indicating that they intended to move to dismiss the FAC. (Dkt. #22 (Bluehost); Dkt. #24 (Automattic)). On April 23, 2020, and June 24, 2020, the Court attempted to hold initial pretrial conferences in this matter (Minute Entry for April 23, 2020; Minute Entry for June 24, 2020), but on both occasions Plaintiff failed to attend, later representing that she was unable to participate because she did

not have a functioning cellular phone (Dkt. #30, 36).  On July 28, 2020, the
Court held an initial pretrial conference, attended by Plaintiff and counsel for
all Defendants.  (*See* July 28, 2020 Tr.).  During the conference, the Court
explained to Plaintiff that her FAC continued to suffer from certain deficiencies,
and noted in particular that the FAC failed to allege any conduct by Twitter.
(*Id.* at 42:25-43:16).  The Court advised: "one of the things that would be
especially useful to [the Court] and to the defendants in this case is … to make
clear what each party did that you believe caused you harm."  (*Id.* at 42:25-
43:3).  The Court accordingly granted Plaintiff leave to file a further amended
complaint.  (Dkt. #37).

On September 15, 2020, Plaintiff filed the SAC.  (Dkt. #41).  The Court
*sua sponte* dismissed the SAC for failure to state a claim on September 17,
2020.  (Dkt. #42).  The Court explained that the SAC "remain[ed] largely
incomprehensible," and was "primarily a collection of various
communications."  (*Id.* at 1).  Given Plaintiff's *pro se* status, the Court granted
Plaintiff "one final opportunity to file a proper complaint."  (*Id.* at 2).  On
October 20, 2020, Plaintiff filed the TAC.  (Dkt. #43).  On October 22, 2020, the
Court issued an order (the "October 22 Order") observing that while Plaintiff's
submission did not fully address the deficiencies it had previously identified,
the Court would nonetheless consider the SAC, Plaintiff's statements at the
July 28, 2020 conference, and the TAC as the operative pleadings.  (Dkt. #44).

Pursuant to the Court's October 22 Order, on November 13, 2020, all
three Defendants submitted letters indicating their intent to file motions to

dismiss Plaintiff's claims.  (Dkt. #45-47).  On November 16, 2020, the Court granted Defendants' requests and set a briefing schedule on their motions to dismiss.  (Dkt. #48).  Defendants' opening briefs and supporting papers were filed on December 16, 2020 (Dkt. #50-53 (Twitter); Dkt. #54-56 (Bluehost); Dkt. #58 (Automattic));[5] Plaintiff's consolidated opposition brief was submitted on January 28, 2021 (Dkt. #66); and briefing concluded with the filing of Defendants' reply briefs on February 11, 2021 (Dkt. #67 (Twitter); Dkt. #70 (Automattic); Dkt. #71 (Bluehost)).

## DISCUSSION

Twitter and Bluehost have moved to dismiss the TAC under Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction.  (Twitter Br. 2-4; Bluehost Br. 8-9).  All three Defendants have moved to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim.  (Twitter Br. 4-10; Bluehost Br. 9-14; Automattic Br. 4-9).[6]

Plaintiff fails to respond to any of the grounds for dismissal in her opposition brief, and instead tailors her response to refuting a reference in Bluehost's opening brief to the September 20 Order cautioning Plaintiff against engaging in further frivolous and vexatious litigation.  (*See generally* Pl. Opp.; *see also* Bluehost Br. 2 (referencing September 20 Order 6)).  In their replies,

---

[5]    Due to a filing deficiency, Automattic's opening papers were re-filed on December 17, 2020.  (Dkt. #60-64).

[6]    In the alternative, Automattic requests that Plaintiff be required to submit a more definite statement of her claims under Rule 12(e).  (Automattic Br. 9-10).  The Court need not reach this issue because, for the reasons discussed in the text, it finds that Plaintiff has failed to state a claim against Automattic and that leave to amend would be futile.

Defendants correctly observe that a failure to respond to an argument on an issue may constitute abandonment of that issue.  (*See* Twitter Reply 1; Bluehost Reply 1-5; Automattic Reply 1-2).  *See Anti-Monopoly, Inc.* v. *Hasbro, Inc.*, 958 F. Supp. 895, 907 n.11 (S.D.N.Y. 1997), *aff'd*, 130 F.3d 1101 (2d Cir. 1997) (per curiam); *see also Jones* v. *Cuomo*, No. 20 Civ. 4898 (KPF), 2021 WL 2269551, at *5 n.2 (S.D.N.Y. June 2, 2021) (considering certain claims "conceded" where plaintiff's briefing failed to respond to defendants' arguments in favor of dismissal (collecting cases)).  However, "in recognition of the special solicitude owed a *pro se* plaintiff," the Court will not deem Plaintiff's claims abandoned, and will consider Defendants' motions.  *See Warmin* v. *N.Y.C. Dep't of Educ.*, No. 16 Civ. 8044 (KPF), 2019 WL 3409900, at *4 (S.D.N.Y. July 29, 2019) (declining to find that plaintiff's claims were abandoned and considering "each of the properly repleaded claims in the SAC").

## A.    The Court Denies Twitter's and Bluehost's Motions to Dismiss Under Federal Rule of Civil Procedure 12(b)(1)

### 1.    Standard of Review

Under Rule 12(b)(1), a defendant may move to dismiss a complaint for lack of subject matter jurisdiction.  Fed. R. Civ. P. 12(b)(1).  "A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Lyons* v. *Litton Loan Servicing LP*, 158 F. Supp. 3d 211, 218 (S.D.N.Y. 2016) (quoting *Makarova* v. *United States*, 201 F.3d 110, 113 (2d Cir. 2000)).

"Subject-matter jurisdiction is a threshold issue that must be addressed prior to the merits."  *Allen* v. *N.Y.C. Hous. Auth.*, No. 15 Civ. 173 (ALC), 2016

WL 722186, at *4 (S.D.N.Y. Feb. 19, 2016).  Federal courts have original jurisdiction over civil actions in which the parties have diversity of citizenship and the amount in controversy exceeds $75,000.  28 U.S.C. § 1332(a).  This is known as diversity jurisdiction, as contrasted with jurisdiction based on the existence of a federal question.  *See* 28 U.S.C. § 1331.  Diversity jurisdiction requires complete diversity between the parties, meaning that no plaintiff has the same citizenship as any defendant.  *Exxon Mobil Corp.* v. *Allapattah Servs., Inc.*, 545 U.S. 546, 553 (2005).

On a Rule 12(b)(1) motion, the challenge to subject matter jurisdiction may be facial or fact-based.  *Carter* v. *Healthport Tech., LLC*, 822 F.3d 47, 55 (2d Cir. 2016).  When considering a facial challenge, a court must determine whether the pleadings "allege[] facts that affirmatively and plausibly suggest that" subject matter jurisdiction exists.  *Id.* (quoting *Amidax Trading Grp.* v. *S.W.I.F.T. SCRL*, 671 F.3d 140, 145 (2d Cir. 2011)).  For purposes of a Rule 12(b)(1) facial challenge, a court accepts all factual allegations as true and draws all reasonable inferences in favor of the plaintiff asserting jurisdiction. *Id.* (citing *W.R. Huff Asset Mgmt. Co., LLC* v. *Deloitte & Touche LLP*, 549 F.3d 100, 106 (2d Cir. 2008); *Lunney* v. *United States*, 319 F.3d 550, 554 (2d Cir. 2003)).  In contrast, to support a fact-based Rule 12(b)(1) challenge, a defendant may proffer evidence beyond the pleadings.  *Carter,* 822 F.3d at 56-57 (citing *Amidax*, 671 F.3d at 145).  To oppose such a motion, a plaintiff must present controverting evidence "if the affidavits submitted on a 12(b)(1) motion ... reveal the existence of factual problems" with respect to jurisdiction.

*Id.* (quoting *Exch. Nat'l Bank of Chi.* v. *Touche Ross & Co.*, 544 F.2d 1126, 1131 (2d Cir. 1976)).

### 2.    Analysis

Twitter and Bluehost argue that Plaintiff has failed to allege subject matter jurisdiction arising under either the Court's diversity jurisdiction or its federal question jurisdiction.  (Twitter Br. 2-4; Bluehost Br. 8-9).  While the Court agrees with these Defendants that Plaintiff's SAC and TAC fail to invoke either basis for jurisdiction, Plaintiff's FAC did represent that she sought to allege subject matter jurisdiction based on diversity.  (FAC 4).  The FAC also recited complete diversity among the parties, as Plaintiff resides in New York and alleged that Automatic and Twitter are domiciled in California and Bluehost in Massachusetts.  (*Id.* at 3, 8).  Plaintiff further alleged that it would be a "costly enterprise" to "hir[e] web developers" to repair the damage to her website, and that such costs would exceed $75,000.  (*Id.* at 25).  Given the solicitude owed to *pro se* plaintiffs when construing their pleadings and motion papers, the Court concludes that it may and will credit Plaintiff's FAC allegations in determining its subject matter jurisdiction.  *See Tracy* v. *Freshwater*, 623 F.3d 90, 101 (2d Cir. 2010) ("It is well established that a court is ordinarily obligated to afford a special solicitude to *pro se* litigants.  The rationale underlying this rule is that a *pro se* litigant generally lacks both legal training and experience and, accordingly, is likely to forfeit important rights

through inadvertence if he is not afforded some degree of protection." (internal citations omitted)).[7]

Bluehost argues that, even accepting the allegations in the FAC, Plaintiff has failed to allege facts sufficient to find a "reasonable probability" that her claim exceeds the $75,000 threshold requirement.  (Bluehost Br. 8-9). However, courts in this Circuit "customarily interpret a plaintiff's allegations of damages as sufficient to satisfy the amount-in-controversy requirement," except where "it is a 'legal certainty' that the plaintiff cannot recover the damages [she] seeks."  *Nwanza* v. *Time, Inc.*, 125 F. App'x 346, 348 (2d Cir. 2005) (summary order) (collecting cases); *see also Colavito* v. *N.Y. Organ Donor Network, Inc.*, 438 F.3d 214, 221 (2d Cir. 2006) ("[W]e recognize 'a rebuttable presumption that the face of the complaint is a good faith representation of the actual amount in controversy[.]'" (quoting *Wolde-Meskel* v. *Vocational Instruction Project Cmty. Servs., Inc.*, 166 F.3d 59, 63 (2d Cir. 1999))).  Here, the Court does not find it to be a "legal certainty" that Plaintiff's alleged amount in controversy is an impossibility.

---

[7]    Plaintiff has not alleged that the Court possesses subject matter jurisdiction pursuant to federal question jurisdiction.  The Court recognizes that Plaintiff's pleadings — if read generously — may attempt to assert a copyright or trademark infringement claim.  (*See* TAC 2; *see also* Twitter Br. 8; Bluehost Br. 12-14; Automattic Br. 5-6 (moving to dismiss any copyright, trademark, or violation of intellectual property rights claim)). However, to the extent any such claim is asserted, it is unclear whether it arises under federal law, and thus does not provide a basis for federal question jurisdiction.  *See Buday* v. *N.Y. Yankees P'ship*, No. 11 Civ. 2628 (DAB), 2011 WL 13176013, at *3 (S.D.N.Y. Oct. 20, 2011) ("Plaintiff's copyright claim, to the extent it is cognizable at all, thus arises under state rather than federal law.  Accordingly, this Court's subject matter jurisdiction will not lie under 28 U.S.C. § 1331, as no federal question is present."), *aff'd*, 486 F. App'x 894 (2d Cir. 2012) (summary order).

Affording Plaintiff particular leniency as a *pro se* litigant, the Court finds that Plaintiff has adequately pleaded facts indicating that the Court may exercise subject matter jurisdiction based on diversity.  Accordingly, it denies Twitter's and Bluehost's motions to dismiss under Rule 12(b)(1).

**B.     The Court Grants Defendants' Motions to Dismiss Under Federal Rule of Civil Procedure 12(b)(6)**

**1.     Standard of Review**

All three Defendants have moved for dismissal of the TAC under Rule 12(b)(6).  To survive a motion to dismiss pursuant to Rule 12(b)(6), a plaintiff must plead sufficient factual allegations "to state a claim to relief that is plausible on its face." *Bell Atl. Corp.* v. *Twombly*, 550 U.S. 544, 570 (2007).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft* v. *Iqbal*, 556 U.S. 662, 678 (2009).  A complaint that contains only "naked assertions" or "a formulaic recitation of the elements of a cause of action" does not suffice. *Twombly*, 550 U.S. at 555.  The Court must accept as true all well-pleaded factual allegations in the complaint. *See Iqbal*, 556 U.S. at 678.

"[C]ourts must construe *pro se* pleadings broadly, and interpret them 'to raise the strongest arguments that they suggest.'" *Cruz* v. *Gomez*, 202 F.3d 593, 597 (2d Cir. 2000) (quoting *Graham* v. *Henderson*, 89 F.3d 75, 79 (2d Cir. 1996)); *cf.* Fed. R. Civ. P. 8(e) ("Pleadings must be construed so as to do justice.").  "However inartfully pleaded, a *pro se* complaint may not be dismissed under Rule 12(b)(6) unless it appears beyond doubt that the plaintiff

14

can prove no set of facts in support of her claim which would entitle her to relief." *Legeno* v. *Corcoran Grp.*, 308 F. App'x 495, 496 (2d Cir. 2009) (summary order) (internal quotation marks and brackets omitted) (quoting *Posr* v. *Court Officer Shield No. 207*, 180 F.3d 409, 413 (2d Cir. 1999)). With that said, to survive a Rule 12(b)(6) motion to dismiss, a *pro se* plaintiff's factual allegations must at least "be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

In making Rule 12(b)(6) determinations, "a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." *DiFolco* v. *MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010); *accord Goel* v. *Bunge, Ltd.*, 820 F.3d 554, 559 (2d Cir. 2016). "Even where a document is not incorporated by reference, the court may nevertheless consider it where the complaint 'relies heavily upon its terms and effect,' which renders the document 'integral' to the complaint." *Chambers* v. *Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) (quoting *Int'l Audiotext Network, Inc.* v. *Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir. 1995) (per curiam)).

## 2. Plaintiff's Claims[8]

Plaintiff's pleadings fail to articulate any specific causes of action against the named Defendants, despite repeated admonitions from the Court. In the

---

[8]     As noted, the Court must "afford ... a special solicitude" to Plaintiff as a *pro se* litigant, *Tracy*, 623 F.3d at 101, and read her submissions to "raise the strongest arguments that they suggest," *Cruz* v. *Gomez*, 202 F.3d 593, 597 (2d Cir. 2000) (quoting *Graham* v. *Henderson*, 89 F.3d 75, 79 (2d Cir. 1996)). Plaintiff puts forth a number of

document captioned her TAC, Plaintiff asserts merely: "All three entities have failed to honor the terms of service and in the process, and individually or collectively violated my intellectual property rights.  Found out the US does not recognize 'database rights,' so unfortunately that is moot, but my copyrights are."  (TAC 2).

From the TAC and Plaintiff's prior submissions and statements, Defendants have endeavored to discern the claims asserted against them, and have structured their Rule 12(b)(6) motions as follows: (i) Twitter seeks to dismiss any claims arising from breaches of its Terms of Service and violations of Plaintiff's intellectual property rights (Twitter Br. 6-9); (ii) Bluehost seeks to dismiss claims arising from fraud, breach of contract, and violations of Plaintiff's intellectual property rights (Bluehost Br. 10-14); and (iii) Automattic seeks to dismiss any claims asserted against it based upon copyright infringement, breach of contract, conversion, and fraud (Automattic Br. 5-8). Having carefully considered Plaintiff's operative pleadings, the Court has identified no additional potential claims.

---

new allegations in her opposition brief, despite having had three opportunities to cure the deficiencies in her pleadings and having been instructed by the Court to "write out … everything that happened [in] a single complaint."  (*See* July 28, 2020 Tr. 43:12-13).  The Court will consider new factual allegations in Plaintiff's briefing where they are consistent with the operative pleadings.  *See, e.g.*, *Braxton* v. *Nichols*, No. 08 Civ. 8568 (PGG), 2010 WL 1010001, at *1 (S.D.N.Y. Mar. 18, 2010); *Coakley* v. *42nd Pct. Case 458,* No. 08 Civ. 6206 (JSR), 2009 WL 3095529 at *3 (S.D.N.Y. Sept. 28, 2009). However, the Court will not consider wholly new claims raised for the first time in Plaintiff's opposition brief, particularly given that Plaintiff has now had three opportunities to amend her pleadings.  *See Mira* v. *Argus Media*, No. 15 Civ. 9990 (RJS), 2017 WL 1184302, at *3 (S.D.N.Y. Mar. 29, 2017); *Pandozy* v. *Segan*, 518 F. Supp. 2d 550, 554 n.1 (S.D.N.Y. 2007), *aff'd*, 340 F. App'x 723 (2d Cir. 2009) (summary order).

### 3.      Choice of Law

In general, "[f]ederal courts exercising diversity jurisdiction apply the choice-of-law rules of the forum state, here New York, to decide which state's substantive law governs." *Rothstein* v. *City of New York*, No. 09 Civ. 5888 (LTS) (HBP), 2011 WL 3296205, at *5 n.8 (S.D.N.Y. June 15, 2011) (quoting *Rocchigiani* v. *World Boxing Council, Inc.*, 131 F. Supp. 2d 527, 530 n.5 (S.D.N.Y. 2001)), *report and recommendation adopted*, 2011 WL 3273473 (S.D.N.Y. July 29, 2011); *accord Fieger* v. *Pitney Bowes Credit Corp.*, 251 F.3d 386, 393 (2d Cir. 2001).  However, "[w]here the parties agree that New York law controls, this is sufficient to establish choice of law." *Fed. Ins. Co.* v. *Am. Home Assurance Co.*, 639 F.3d 557, 566 (2d Cir. 2011).

Bluehost's and Automattic's briefing assumes that New York law controls Plaintiff's potential state-law claims (*see* Bluehost Br. 10-12; Automattic Br. 5-9), and Plaintiff does not proffer any alternative state substantive law (*see* Pl. Opp.).  Courts have held that "such implied consent is sufficient to establish choice of law." *MIG, Inc.* v. *Paul, Weiss, Rifkind, Wharton & Garrison, LLP*, 701 F. Supp. 2d 518, 532 (S.D.N.Y. 2010) (internal citations and modifications omitted) (quoting *Motorola Credit Corp.* v. *Uzan,* 388 F.3d 39, 61 (2d Cir. 2004)), *aff'd*, 410 F. App'x 408 (2d Cir. 2011) (summary order).  The Court will accordingly analyze Plaintiff's state-law claims under New York law.

### 4.      Plaintiff Fails to State an Intellectual Property Rights Claim

Plaintiff alleges that Defendants "individually or collectively violated [her] intellectual property rights."  (TAC 2).  Defendants argue that to the extent

17

Plaintiff seeks to allege a copyright claim, trademark infringement claim, or any other violation of her intellectual property rights, any such claims fail.  (Twitter Br. 8; Bluehost Br. 12-14; Automatic Br. 5).

"The owner of a copyright has the exclusive right to — or to license others to — reproduce, perform publicly, display publicly, prepare derivative works of, and distribute copies of, [her] copyrighted work." *Arista Records, LLC* v. *Doe 3*, 604 F.3d 110, 117 (2d Cir. 2010) (citing 17 U.S.C. § 106).  To state a claim for copyright infringement, "a plaintiff must allege both [i] ownership of a valid copyright and [ii] infringement of the copyright by the defendant." *Spinelli* v. *Nat'l Football League*, 903 F.3d 185, 197 (2d Cir. 2018) (internal quotation marks omitted).  Here, Plaintiff has not alleged ownership over any registered copyright.  Accordingly, at the outset, the Court must dismiss any copyright infringement claim asserted against any of the Defendants.  *See LLM Bar Exam, LLC*, v. *Barbri, Inc.*, 271 F. Supp. 3d 547, 588-89 (S.D.N.Y. 2017) ("[B]ecause [plaintiff] did not even file an application for registration prior to instituting this lawsuit, it cannot bring an infringement claim under the Copyright Act." (alterations, quotation marks, and emphasis omitted) (quoting *Psihoyos* v. *John Wiley & Sons, Inc.*, 748 F.3d 120, 125 (2d Cir. 2014))).[9]

---

[9]     For similar reasons, any trademark infringement claim also fails, as Plaintiff has not alleged that she owns a registered trademark.  *See Pulse Creations, Inc.* v. *Vesture Grp.*, 154 F. Supp. 3d 48, 53-54 (S.D.N.Y. 2015) (observing that in analyzing a trademark infringement claim under either Section 32 of the Lanham Act, 15 U.S.C. § 1114, or New York law, courts look to "whether the plaintiff's mark is entitled to protection" (citing *Tiffany (NJ) Inc.* v. *eBay Inc.*, 600 F.3d 93, 102 (2d Cir. 2010); *Smith* v. *Mikki More, LLC*, 59 F. Supp. 3d 595, 616 (S.D.N.Y. 2014))).

Moreover, the TAC does not include any specific allegations of infringement by any of the Defendants.  Plaintiff alleges that Automattic, via WordPress.com, "appropriated" the www.thetranspersonalway.training domain and "claimed to have 'created' the domain in its ICANN registration."  (TAC 1). However, Plaintiff's pleadings themselves indicate that she authorized the registration of her domain with Automattic, inasmuch as she has submitted a number of communications that appear to reference the "upgrade" of her website to Automattic's WordPress.com server.  (*See, e.g.*, SAC 7 (stating that she "upgraded thetranspersonalway.training to WordPress.com"); *id.* (quoting email from WordPress.com stating "we need you to complete a few preliminary steps to initiate and authorize the domain transfer"); *id.* at 45-47 (email from WordPress.com discussing Plaintiff's domain name registration of thetranspersonalway.training); *id.* at 50 (chat with WordPress.com support in which Plaintiff states that she received an email regarding the purchase of "a domain transfer upgrade" and that she had "upgraded thetranspersonalway.training.")).  While Plaintiff has represented that she was "surprised" to later learn that Automattic was the domain registrar (July 28, 2020 Tr. 18:1-2), such surprise does not amount to a copyright infringement claim, particularly where Plaintiff appears to have consented to the initial registration of her domain with Automattic.  Further, under Automattic's Terms of Service, Plaintiff granted a license to Automattic for the use of her content hosted on its servers.  (*See* Morton Decl., Ex. A at § 1 (Automattic's

19

January 31, 2018 Terms of Service); *id.*, Ex. B at § 1 (Automattic's May 14, 2018 Terms of Service)).

Plaintiff otherwise fails to plead any allegations with respect to Bluehost or Twitter that could support a claim for violations of Plaintiff's intellectual property rights.  Plaintiff's allegations regarding Bluehost's transfer of her website content do not appear to have any bearing on any intellectual property rights claims.  (*See, e.g.*, TAC 1).  And Plaintiff's allegations regarding her various issues with her Twitter account similarly do not appear to give rise to any intellectual property rights violation.  (*See id.*; Pl. Opp. 4-6).  Moreover, as with Automattic, under Twitter's Terms of Service Plaintiff granted Twitter a license to display her content.  (*See* Twitter Terms of Service § 3).  Accordingly, the Court dismisses these claims.  *See Ochre LLC* v. *Rockwell Architecture Planning & Design, P.C.*, No. 12 Civ. 2387 (KBF), 2012 WL 6082387, at *5 (S.D.N.Y. Dec. 3, 2012) (deeming copyright claims insufficiently pleaded where plaintiff "fails to allege facts constituting copyright infringement," and "improperly 'lumps' together the allegations against the various defendants"), *aff'd*, 530 F. App'x 19 (2d Cir. 2013) (summary order).

### 5.   Plaintiff Fails to State a Breach of Contract Claim

Defendants next argue that Plaintiff has failed to allege either a breach of contract claim or any other claim arising from alleged violations of their terms of service.  (Twitter Br. 6-8; Bluehost Br. 11-12; Automattic Br. 5-6).  "Under New York law, the elements of a breach of contract claim are [i] the formation of an agreement, [ii] performance by one party, [iii] breach of agreement by the

other party, and [iv] damages." *Berman* v. *Sugo LLC*, 580 F. Supp. 2d 191, 202

(S.D.N.Y. 2008) (citing *First Investors Corp.* v. *Liberty Mut. Ins. Co.*, 152 F.3d

162, 168 (2d Cir. 1998)).[10]

Plaintiff's TAC alleges that "all three entities have failed to honor [their]

terms of service," but fails to identify what provisions of Defendants' terms of

service they allegedly breached.  (TAC 1).[11]  As identifying specific contractual

provisions that were breached by a defendant's conduct is "an essential

requirement for a breach of contract claim," this omission compels dismissal of

Plaintiff's breach of contract claims.  *Orange Cnty. Choppers, Inc.* v. *Olaes*

*Enters., Inc.*, 497 F. Supp. 2d 541, 554 (S.D.N.Y. 2007) (collecting cases); *see*

*also Lopez* v. *Aeropostale, Inc.*, No. 11 Civ. 4166 (RMB), 2012 WL 13059794, at

---

[10]  Both Automattic's and Twitter's Terms of Service provide that the agreements are governed by the laws of the state of California.  (*See* Morton Decl., Ex. A at § 16; *id.*, Ex. B at § 16; Twitter Terms of Service § 6).  However, Automattic's briefing assumes that New York law governs any breach of contract claims (*see* Automattic Br. 5-6), and Twitter's briefing does not indicate that California law should control any state-law claims (*see generally* Twitter Br.).  Moreover, given Plaintiff's threadbare allegations, the Court submits that the outcome on this issue would be no different under California law.  Accordingly, the Court will apply New York law when considering Plaintiff's potential breach of contract claims against Defendants.  *See Fed. Ins. Co.* v. *Am. Home Assurance Co.*, 639 F.3d 557, 566 (2d Cir. 2011) ("Under New York choice of law rules, the first inquiry in a case presenting a potential choice of law issue is whether there is an actual conflict of laws on the issues presented.  If not, no choice of law analysis is necessary." (citing *Fieger* v. *Pitney Bowes Credit Corp.*, 251 F.3d 386, 393 (2d Cir. 2001))).

[11]  In her opposition brief, Plaintiff observes that Twitter's Terms of Service provide: "You retain your rights to any content you submit, post or display on or through our services."  (Pl. Opp. 8 (quoting Twitter Terms of Service § 3)).  But even were the Court willing to accept this allegation, Plaintiff has not alleged any breach of this provision by Twitter, as she must to state a breach of contract claim.  And as noted above, the very same provision cited in Plaintiff's briefing grants Twitter a license to display her content.  (*See* Twitter Terms of Service § 3 ("By submitting, posting or displaying Content on or through the Services, you grant us a worldwide, non-exclusive, royalty-free license ....")).

*5 (S.D.N.Y. Feb. 10, 2012) (dismissing breach of contract claim where *pro se* plaintiff failed to identify any provision of the agreement barring defendant's conduct).[12]

### 6.    Plaintiff Fails to State a Fraud Claim

Bluehost and Automattic next move to dismiss any fraud claims alleged against them by Plaintiff.  (Bluehost Br. 10-11; Automattic Br. 8).  To state a claim for common-law fraud under New York law, a plaintiff must allege facts showing: "[i] a misrepresentation or a material omission of fact which was false and known to be false by defendant, [ii] made for the purpose of inducing the other party to rely upon it, [iii] justifiable reliance of the other party on the misrepresentation or material omission, and [iv] injury."  *Premium Mortg. Corp.* v. *Equifax, Inc.*, 583 F.3d 103, 108 (2d Cir. 2009) (quoting *Lama Holding Co.* v. *Smith Barney Inc.*, 88 N.Y.2d 413, 421 (1996)).  Moreover, "[i]n a federal diversity action, such a claim must be pleaded with particularity" pursuant to Rule 9(b).  *Id.*  Specifically, "the [claim] must: [i] specify the statements that the

---

[12]     Moreover, Automattic observes that to the extent that Plaintiff is alleging that it infringed upon her copyright, under its Terms of Service, it possessed "a world-wide, royalty-free, and non-exclusive license to reproduce, modify, adapt and publish the Content solely for the purpose of displaying, distributing, and promoting [Plaintiff's] blog."  (Automattic Br. 5 (quoting Morton Decl., Ex. A at § 1; *id.*, Ex. B at § 1)).  Automattic also had the right to make any public content available to third parties to distribute.  (*Id.*).

With respect to Plaintiff's allegations about difficulties accessing her Twitter account and other issues with her Twitter account usage, Twitter argues that under its Terms of Service, it had the right to suspend her account access, and that it disclaimed any responsibility for the various privacy-related issues alleged by Plaintiff.  (Twitter Br. 7 (citing Twitter Terms of Service §§ 4, 5)).  Twitter further argues that it is entitled to exercise editorial discretion over its platform under Section 230 of the Communications Decency Act, 47 U.S.C. § 230(c), as well as the First Amendment.  (*Id.* at 7-8).  While the Court need not reach these issues in light of the deficiencies in Plaintiff's pleadings, it agrees that Automattic's and Twitter's Terms of Service appear to contemplate and bar a number of Plaintiff's grievances.

plaintiff contends were fraudulent, [ii] identify the speaker, [iii] state where and when the statements were made, and [iv] explain why the statements were fraudulent." *Lerner* v. *Fleet Bank, N.A.*, 459 F.3d 273, 290 (2d Cir. 2006) (citing *Mills* v. *Polar Molecular Corp.*, 12 F.3d 1170, 1175 (2d Cir. 1993)). Additionally, to satisfy Rule 9(b), a claim must "allege facts that give rise to a strong inference of fraudulent intent." *Berman* v. *Morgan Keenan & Co.*, 455 F. App'x 92, 95 (2d Cir. 2012) (summary order) (quoting *Acito* v. *IMCERA Grp.*, 47 F.3d 47, 52 (2d Cir. 1995)).

Here, the Court cannot make out any claim for fraud in Plaintiff's pleadings, let alone one that satisfies the rigorous pleading standards of Federal Rule of Civil Procedure 9(b). Plaintiff fails to identify any false statements by any of the Defendants, or to allege justifiable reliance on any putative misstatements. *See Walia* v. *Veritas Healthcare Sols., L.L.C.*, No. 13 Civ. 6935 (KPF), 2015 WL 4743542, at *8 (S.D.N.Y. Aug. 11, 2015) (dismissing fraud claim where "even taking into account the solicitude due Plaintiff as a *pro se* litigant, it is not possible for the Court to determine what statement forms the basis of his fraud claim"). Moreover, Plaintiff puts forth no allegations demonstrating fraudulent intent. In particular, none of Plaintiff's submissions identifies any discernable motive on the part of Defendants to mislead Plaintiff, either with respect to the transfer of her website content or with respect to the

various technical issues she encountered with her Twitter account.[13]  For all of these reasons, Plaintiff has failed to state a claim against Defendants for fraud.

### 7.    Plaintiff Fails to State a Conversion Claim

Lastly, Automattic moves to dismiss any conversion claim arising from its alleged "appropriation" of Plaintiff's domain www.thetranspersonalway.training.  (Automattic Br. 7-8; *see also* TAC 1).  Under New York law, to plead a claim of conversion, a plaintiff must establish that "[i] the property subject to conversion is a specific identifiable thing; [ii] plaintiff had ownership, possession[,] or control over the property before its conversion; and [iii] defendant exercised an unauthorized dominion over the thing in question, to the alteration of its condition or to the exclusion of the plaintiff's rights."  *Ellington Credit Fund, Ltd.* v. *Select Portfolio Servicing, Inc.*, 837 F. Supp. 2d 162, 204 (S.D.N.Y. 2011) (quoting *Moses* v. *Martin*, 360 F. Supp. 2d 533, 541 (S.D.N.Y. 2004)).

Automattic argues that under New York law, a domain name is not personal property and thus cannot be the subject of a conversion claim.  (Automattic Br. 7 (citing *Wornow* v. *Register.Com, Inc.*, 778 N.Y.S.2d 25 (1st Dep't 2004))).  In support, it relies upon a decision from the First Department finding that the automatic renewal of a plaintiff's domain name registrations did not violate the notice requirement of Section 5-903 of New York General Obligations Law.  *See Wornow*, 778 N.Y.S.2d at 26.  In so holding, the *Wornow*

---

[13]    While Plaintiff alleges that "WordPress.com/Automattic had a different agenda," she provides no further detail as to what that agenda was.  (*See* SAC 9).

court observed that "[w]e are in accord with authorities holding that a domain name that is not trademarked or patented is not personal property, but rather a contract right that cannot exist separate and apart from the services performed by a [domain name] registrar such as defendant." *Id.*

Significantly, however, following the *Wornow* decision, the New York Court of Appeals determined that "electronic records that were stored on a computer and were indistinguishable from printed documents" were "subject to a claim of conversion." *Thyroff* v. *Nationwide Mut. Ins. Co.*, 8 N.Y.3d 283, 292-93 (2007). Relying upon *Thyroff*, courts in this District have indicated that intangible property such as websites and account information can be the object of conversion under New York law. *See Triboro Quilt Mfg. Corp.* v. *Luve LLC*, No. 10 Civ. 3604 (VB), 2014 WL 1508606, at *9 (S.D.N.Y. Mar. 18, 2014) ("New York courts recognize exceptions when the rightful owner of intangible property is prevented from creating or enjoying a 'legally recognizable and protectable property interest in his idea' such as by being prevented from registering the domain name for a website or being denied access to a database he created."); *Ardis Health, LLC* v. *Nankivell*, No. 11 Civ. 5013 (NRB), 2011 WL 4965172, at *1, 3 (S.D.N.Y. Oct. 19, 2011) (finding that defendant's "unauthorized retention" of information including "passwords and other login information for websites, email accounts, and social media accounts, as well as for third-party servers where plaintiffs stored content," could form the basis of a claim of conversion).

More recently, two sister courts in this District have found that domain names may be the subject of a conversion claim.  In *Salonclick LLC* v. *SuperEgo Management LLC*, Judge Wood declined to dismiss a conversion claim arising from the seizure of domain names or social media accounts, distinguishing *Wornow* as "focus[ing] exclusively on the domain name registration service, as opposed to possession and control of a website."  No. 16 Civ. 2555 (KMW), 2017 WL 239379, at *3 (S.D.N.Y. Jan. 18, 2017).  Judge Broderick similarly concluded, upon a review of the aforementioned precedent, that "New York law does permit a plaintiff to sue for conversion based on interference with a domain name."  *Am. Lecithin Co.* v. *Rebmann*, No. 12 Civ. 929 (VSB), 2020 WL 4260989, at *19-20 (S.D.N.Y. July 24, 2020).  Consistent with this evolving jurisprudence, the Court will not dismiss Plaintiff's conversion claim against Automattic merely because it involves alleged interference with a domain name.

However, Plaintiff's conversion claim nonetheless fails because she has not alleged any "unauthorized" interference by Automattic that resulted in the "alteration of [her property's] condition" or that operated "to the exclusion of [ ] [her] rights."  *Ellington Credit Fund, Ltd.*, 837 F. Supp. 2d at 204 (quoting *Moses*, 360 F. Supp. 2d at 541).  As discussed above, the various communications appended to Plaintiff's pleadings indicate that she authorized the registration of her domain with Automattic.  (*See, e.g.*, SAC 7, 45-47, 50).  Moreover, Plaintiff does not allege that she suffered any injury as a result of her

26

registration with Automattic.[14]  Automattic did not seize control of Plaintiff's domain name, but rather permitted Plaintiff to transfer the contents associated with her domain name to Bluehost.  (*See* July 28, 2020 Tr. 19:22-24, 21:20-22:6; TAC 1; *see also* SAC 70 (June 8 email from WordPress.com Support stating "Even though you've pointed your domain thetranspersonalway.training to your Bluehost site now, the domain is still registered with us.")).  *Cf. Salonclick LLC*, 2017 WL 239379, at *4 ("Plaintiff has not alleged that Defendants' trespass has caused injury to the chattel — that is, the domain names or social media accounts — particularly now that Plaintiff has possession of most, if not all, of the accounts[.]" (emphasis omitted)).  While Bluehost's transfer of Plaintiff's website content allegedly resulted in other issues (*see* July 28, 2020 Tr. 21:20-23:5), those issues — at least on the face of Plaintiff's submissions — are not attributed to Automattic and do not provide the basis for any conversion claim against Automattic.

### 8.    The Court Denies Leave to Amend

"Rule 15(a)(2) of the Federal Rules of Civil Procedure provides that a court 'should freely give leave [to amend] when justice so requires.'"  *Gorman* v. *Covidien Sales, LLC*, No. 13 Civ. 6486 (KPF), 2014 WL 7404071, at *2 (S.D.N.Y. Dec. 31, 2014) (quoting Fed. R. Civ. P. 15(a)(2)).  Consistent with this liberal

---

[14]    In the July 28, 2020 conference, Plaintiff stated that she had security concerns with maintaining a domain name with Automattic, and wished to transfer her content to Bluehost, as Bluehost offered the "Sitelock" security feature.  (July 28, 2020 Tr. 11:22-12:2).  However, Plaintiff does not allege that she has encountered any security breaches or associated issues while using Automattic's services.  Thus, Plaintiff's concerns with Automattic's retention of her domain do not rise to the level of alleging any injury.

amendment policy, "'[t]he rule in this Circuit has been to allow a party to amend its pleadings in the absence of a showing by the nonmovant of prejudice or bad faith.'" *Id.* (alteration in *Gorman*) (quoting *Block* v. *First Blood Assocs.*, 988 F.2d 344, 350 (2d Cir. 1993)).  That being said, "it remains 'proper to deny leave to replead where ... amendment would be futile.'" *Id.* (quoting *Hunt* v. *All. N. Am. Gov't Income Tr., Inc.*, 159 F.3d 723, 728 (2d Cir. 1998)).

Plaintiff has not requested to amend her complaint, and the Court concludes that any amendment would be futile.  While the Court sympathizes with Plaintiff's frustrations at the myriad technical issues she appears to have encountered in recent years, some of which have rendered her writing inaccessible to her, the Court nonetheless fears that granting Plaintiff a fourth amendment would only bring more of the same.  Plaintiff has thrice amended her complaint, has received two rounds of pre-motion letters from Defendants, has had the benefit of both written and oral guidance from the Court (*see* September 20 Order; *see also* Dkt. #42; July 28, 2020 Tr.), and nonetheless has continued to fail to adequately state a claim for which relief can be granted.  Moreover, Plaintiff was forewarned when granted leave to file the TAC that she would be afforded "one final opportunity to file a proper complaint." (Dkt. #42 at 2).  *Cf. Nat'l Credit Union Admin. Bd.* v. *U.S. Bank Nat'l Ass'n*, 898 F.3d 243, 257-58 (2d Cir. 2018) ("When a plaintiff was aware of the deficiencies in his complaint when he first amended, he clearly has no right to a second amendment even if the proposed second amended complaint in fact cures the defects of the first.  Simply put, a busy district court need not allow itself to be

imposed upon by the presentation of theories seriatim." (alteration, footnote, and internal quotation marks omitted)); *Binn* v. *Bernstein*, No. 19 Civ. 6122 (GHW) (SLC), 2020 WL 4550312, at *34 (S.D.N.Y. July 13, 2020) ("To grant Plaintiffs leave to amend would be allowing them a 'third bite at the apple,' which courts in this district routinely deny." (collecting cases)), *report and recommendation adopted*, 2020 WL 4547167 (S.D.N.Y. Aug. 6, 2020)). Accordingly, the TAC is dismissed with prejudice.

## CONCLUSION

For the reasons stated in this Opinion, Defendants' motions to dismiss are GRANTED in part and DENIED in part. The Court denies Twitter's and Bluehost's motions to dismiss for lack of subject matter jurisdiction, and grants Defendants' motions to dismiss for failure to state a claim. The Clerk of Court is directed to terminate all pending motions, adjourn all remaining dates, and close this case. The Clerk of Court is further directed to mail a copy of this Opinion to Plaintiff.

SO ORDERED.

Dated:      August 31, 2021
            New York, New York

_____
KATHERINE POLK FAILLA
United States District Judge

29